## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

STEPHEN MCGINLEY and LISA :
MOONEY, individually, and as :
husband and wife, :   **CIVIL CASE NO.:**
2609 Madara Road :
Bensalem, PA 19020, :
    Plaintiffs, :
     :
  vs.    :
     :
LM GENERAL INSURANCE COMPANY :
a/k/a, f/k/a, and/or d/b/a LIBERTY :  **JURY TRIAL DEMANDED**
MUTUAL INSURANCE COMPANY :
175 Berkeley Street :
Boston, MA 02116, :
    Defendant. :

---

## CIVIL ACTION COMPLAINT

Plaintiffs, STEPHEN MCGINLEY and LISA MOONEY, by and through their attorneys, Green & Schafle LLC, state that they have multiple causes of action against Defendant, LM GENERAL INSURANCE COMPANY a/k/a, f/k/a, and/or d/b/a LIBERTY MUTUAL INSURANCE COMPANY, and in support thereof, upon information and belief, aver the following:

### PARTIES

1. Plaintiffs, STEPHEN MCGINLEY and LISA MOONEY, are citizens of the Commonwealth of Pennsylvania, residing at 2609 Madara Road, Bensalem, PA 19020 in Bucks County.

2. Defendant, LM General Insurance Company a/k/a, f/k/a, and/or d/b/a Liberty Mutual Insurance Company (hereinafter "LM General Insurance"), is a corporation and/or other business entity authorized to conduct business in the Commonwealth of Pennsylvania, and

regularly conducts business in Philadelphia, Bucks, Montgomery, and Chester counties, with its principal place of business located at 175 Berkeley St., Boston, MA 02116.

3.      Defendant, LM General Insurance, was at all times material hereto, an insurance company, duly authorized and licensed to practice its profession by the Commonwealth of Pennsylvania, and was engaged in the practice of providing insurance policies, including motor vehicle liability policies including underinsured and uninsured motorist coverage.

## JURISDICTION AND VENUE

4.      The cause of action described hereinafter accrued in the Commonwealth of Pennsylvania, Philadelphia  County, which was the place of the motor vehicle accident that gives rise to the underlying Underinsured Motorist Complaint.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiffs and Defendant are citizens of different states and the amount in controversy is in excess of $75,000.00, exclusive of interest and cost.

6.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) because the policy giving rise to Plaintiffs' claims was issued in this Judicial District, a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District, and because Defendant regularly conducts business within the Judicial District.

## FACTS

7.      On or about June 2, 2017, at or about 4:00 p.m., Plaintiff, STEPHEN MCGINLEY, was lawfully operating his vehicle on Interstate 95 at or near the Cottman Avenue Exit, in Philadelphia, Pennsylvania.

8.      At the aforesaid date and time, Plaintiff STEPHEN MCGINLEY's vehicle was stuck in the rear by a vehicle owned and/or operated by Steven Herman, the force of which

caused Plaintiff's vehicle to be pushed forward striking the vehicle in front of Plaintiff's vehicle.

9.      As a result of the collision, Plaintiff, STEPHEN MCGINLEY, sustained serious personal injuries and other financial losses as set forth herein.

10.     At the time of the aforesaid motor vehicle collision, Steven Herman was insured with Progressive Insurance Company and maintained liability insurance coverage in the amount of Fifty Thousand  ($50,000.00) Dollars.

11.     Following receipt of Plaintiff's, STEPHEN MCGINLEY, accident related medical records, medical bills, wage loss, and other accident related documentation, Progressive Insurance Company tendered Forty-Nine Thousand  ($49,000.00) Dollars to Plaintiffs.

12.     Notice of the aforesaid covered loss and Plaintiffs' intent to pursue Underinsured Motorist benefits was provided to the Defendant, LM General Insurance, in a prompt and timely manner by Plaintiffs and, at all times relevant hereto, Plaintiff fully complied with all of the terms and conditions required by the policy.

13.     On April 15, 2020, Defendant, LM General Insurance, by and through their agent, servant and/or employee, Rebecca Harris, gave consent to settle the Plaintiffs' claims against Steven Herman in the amount of Forty-Nine Thousand  ($49,000.00) Dollars.

14.     The aforesaid collision was caused solely and exclusively by reason of the negligence of Steven Herman, and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiffs, STEPHEN MCGINLEY and LISA MOONEY.

15.     Negligence and carelessness of Steven Herman consisted of, but is not limited to:

      a.   operation of a motor vehicle without paying the proper attention required;

      b.   operation of a motor vehicle at an unsafe speed under the circumstances;

c.   failing to operate a motor vehicle in a fashion so as to avoid a collision with another motor vehicle;

d.   operation of a motor vehicle in a negligent and/or careless manner without regard for the rights or safety of Plaintiffs and others;

e.   failing to regard the point, position and safety of the Plaintiff and others;

f.   failing to have said motor vehicle under proper and adequate control;

g.   violation of the "assured clear distance rule" as it pertains to the accident herein under the circumstances set forth;

h.   failing to be aware and cognizant of existing roadway conditions, i.e., other traffic, traffic control devices, etc.;

i.   failing to take all reasonable and prudent measures to avoid striking a motor vehicle;

j.   failing to inspect Defendant's motor vehicle and/or to maintain said motor vehicle in a safe and non-defective condition;

k.   on information and belief and subject to discovery, operation of a motor vehicle which was not in proper working condition at the time of the accident;

l.   failing to operate a motor vehicle in compliance with the applicable laws and ordinances of Philadelphia County and the Commonwealth of Pennsylvania pertaining to the operation and control of motor vehicles;

m.   on information and belief and subject to discovery, violation of the Pennsylvania Vehicle Code, specifically the rules regarding having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

16.   As a direct result of the carelessness and negligence of Steven Herman, as set forth more fully above, Plaintiff, STEPHEN MCGINLEY, suffered severe back injuries including, but not limited to, disc protrusions at L1-2 and disc protrusions at L4-5 toward the left neural foramen, radiculopathy down both of his legs, and right sacroiliac joint dysfunction.

17.     As a direct result of the carelessness and negligence of Steven Herman, as set forth more fully above, Plaintiff, STEPHEN MCGINLEY, sought medical treatment in and about an effort to cure himself of his injuries and has incurred medical expenses in and about an effort to cure himself of his injuries, to his great detriment and loss, and he may continue to require same for an indefinite time in the future.

18.     As a direct result of the carelessness and negligence of Steven Herman, as set forth more fully above, Plaintiff, STEPHEN MCGINLEY, has in the past and will in the future be prevented from performing his usual duties, occupation, and has suffered and will suffer a loss of earning and earning capacity.

19.     As a direct result of the carelessness and negligence of Steven Herman, as set forth more fully above, Plaintiff, STEPHEN MCGINLEY, has in the past and will in the future continue to suffer severe pain, mental anguish, humiliation, embarrassment, loss of well-being, loss of the ability to engage in normal activities and the ability to pursue and enjoy the normal and ordinary pleasures of life.

20.     At all times relevant hereto Plaintiff, LISA MOONEY, was wife of Plaintiff, STEPHEN MCGINLEY.

21.     As a result of the carelessness and negligence of Steven Herman, as set forth more fully above, Plaintiff, LISA MOONEY, has been deprived of the earnings, society, conjugal fellowship, loss of consortium, and services of her husband, STEPHEN MCGINLEY.

## COUNT I - UNDERINSURED MOTORIST CLAIM
### Plaintiffs, Stephen Mcginley And Lisa Mooney, vs. Defendant,  LM General Insurance

22.     Plaintiffs incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

23.     At the time of the aforesaid motor vehicle accident, Steven Herman was insured

by Progressive Insurance Company with bodily injury liability coverage in the amount of Fifty

Thousand  ($50,000.00) Dollars.

24.     Steven Herman's bodily injury liability coverage in the amount of Fifty Thousand

($50,000.00) Dollars was not adequate to fully compensate Plaintiffs for their injuries and other

losses including financial losses they sustained as a result of the negligence and carelessness of

Steven Herman.

25.     On June 2, 2017, the date of the aforesaid motor vehicle accident, Plaintiffs,

STEPHEN MCGINLEY and LISA MOONEY, maintained a policy of automobile insurance

coverage they purchased from Defendant, LM General Insurance, by and through their agents,

servants and/or employees and/or ostensible agents, which was written and issued in accordance

with the Motor Vehicle Financial Responsibility Laws of Pennsylvania (75 Pa. C.S.A. §1702, et

seq.) under LM General Insurance policy number AOS-288-056963-75. A copy of the

Automobile Policy is attached hereto as  "A."

26.     The aforesaid LM General Insurance policy number AOS-288-056963-75

provided for Underinsured Motorist coverage in the amount of One Hundred Thousand

($100,000.00) Dollars.

27.     The aforesaid policy of insurance issued by Defendant, LM General Insurance,

was in full force and effect on June 2, 2017.

28.     Plaintiffs have made a demand for a tender of the full limit of Underinsured

Motorist coverage in the amount of One Hundred Thousand  ($100,000.00) Dollars. To date, the

Defendant has not tendered an offer to resolve this matter.

29.     As a result of the refusal of the Defendant herein to tender the Underinsured

Motorist coverage, Plaintiffs filed the instant action to recover those benefits.

**WHEREFORE**, Plaintiffs demand judgment against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, for all available compensatory damages to be awarded in accordance with applicable state laws, and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest, and costs.

### COUNT II – BREACH OF CONTRACT
**Plaintiffs, Stephen Mcginley And Lisa Mooney, vs. Defendant,  LM General Insurance**

30.     Plaintiffs incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

31.     Defendant, LM General Insurance, owes Plaintiffs a fiduciary, contractual, and statutory obligation to investigate, evaluate, and negotiate Plaintiffs' Underinsured Motorist claim in good faith and to arrive at a prompt, fair, and equitable settlement.

32.     By virtue of its conduct as averred above, Defendant, LM General Insurance, breached its obligations under the Underinsured Motorist provisions of the Policy.

33.     By virtue of the breach of its obligations by Defendant, LM General Insurance, Plaintiffs sustained significant consequential damages, including those relating to the harm averred above, and has been otherwise damaged in the manner set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, for all available compensatory damages to be awarded in accordance with applicable state laws, and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest, and costs.

### COUNT III – BAD FAITH
**Plaintiffs, Stephen Mcginley And Lisa Mooney, vs. Defendant,  LM General Insurance**

34.     Plaintiffs incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

35.    The actions of Defendant, LM General Insurance, have been unreasonable, reckless and contrary to its contractual obligations, including but not limited to its duty of good faith and fair dealing.

36.    The unreasonable and reckless conduct of Defendant, LM General Insurance, is exemplified by the conduct described above and its:

    a.  refusing and attempting to avoid paying benefits to Plaintiffs, even though the facts of their claim supported such a payment;

    b.  compelling litigation by unreasonably forcing Plaintiffs to institute litigation to receive the protections, benefits and remedies due and owing under the Policy and Pennsylvania statutory and regulatory law;

    c.  placing its own interests ahead of those of its insured;

    d.  refusing without a reasonable basis to pay benefits due and owing under the Policy;

    e.  dilatory claims handling;

    f.  abusive claims handling;

    g.  affording an unduly restrictive interpretation of Policy provisions;

    h.  acting unreasonably and unfairly in responding to Plaintiffs' claim;

    i.  failing to objectively and fairly investigate and evaluate Plaintiffs' claim;

    j.  unreasonably withholding Policy benefits owing Plaintiffs;

    k.  failing to make any reasonable offer to resolve Plaintiffs' claim for underinsured motorist benefits;

    l.  failing to pay benefits to Plaintiffs even those underinsured motorist benefits its own evaluation and investigation, unreasonable and arbitrary as they were, indicated were due and owing; and

m. otherwise acting in bad faith and without a reasonable basis with actual or constructive knowledge of the lack of a reasonable basis for its actions as discovery may later demonstrate.

37.     At all relevant times, Defendant, LM General Insurance, actions were willful, wanton, reckless and intentional and were based upon and motivated by its pursuit of monetary gain without regard for the resulting damage and injury and deprivation of insurance benefits due and owing to Plaintiffs.

38.     By virtue of its conduct, Defendant, LM General Insurance, violated the Policy's covenant of good faith and fair dealing and committed bad faith, including that conduct constituting bad faith under 42 Pa. C.S.A. § 8371, for which it is liable for interest on the claim from the date the claim was made in an amount equal to the prime rate of interest plus three percent (3%), court costs, attorney fees, punitive damages and such other compensatory, consequential and extra-contractual damages allowed by law.

**WHEREFORE**, Plaintiffs demand judgment against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, for all available compensatory damages to be awarded in accordance with applicable state laws, and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest, and costs.

<u>**COUNT IV – UNFAIR TRADE PRACTICES**</u>
<u>**AND CONSUMER PROTECTION LAW**</u>
<u>**Plaintiffs, Stephen Mcginley And Lisa Mooney, vs. Defendant,  LM General Insurance**</u>

39.     Plaintiffs incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

40.     By virtue of its conduct, Defendant, LM General Insurance, has committed acts of malfeasance and unfair, deceptive, deceitful and/or fraudulent business practices prohibited by Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et. seq.

41.     By virtue of the unfair, deceptive, deceitful and/or fraudulent conduct of Defendant, LM General Insurance, Plaintiffs have sustained the damages set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, for all available compensatory damages to be awarded in accordance with applicable state laws, and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest, and costs.

Respectfully submitted,

**GREEN & SCHAFLE, LLC**

Date: February 5, 2021                    BY: _____
ADAM M. GREEN, ESQUIRE
I.D. NO.: 93060

Date: February 5, 2021                    BY: _____
STEPHEN M. SPECHT, ESQUIRE
I.D. NO.: 326398
2332  South Broad Street
Philadelphia, PA 19145
Phone: (215) 462-3330
Fax:    (215) 567-1941

**ATTORNEYS FOR PLAINTIFFS**

## VERIFICATION

Plaintiff, STEPHEN MCGINLEY, hereby states that he is the Plaintiff in this action and verify that the statements contained in the foregoing COMPLAINT, are true and correct to the best of their knowledge, information and belief.  The language of the COMPLAINT is that of my counsel and I have relied upon them in making this verification. The undersigned understand that the statements contained therein are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.


_____
STEPHEN MCGINLEY
Plaintiff

# EXHIBIT A



**Liberty Mutual Insurance**

350 E. 96th Street
Indianapolis, IN 46240

August 14, 2020

Becky Harris
PO Box 515097
Los Angeles, CA 90051

| | |
|---|---|
| Insured Name: | Lisa A Mooney |
| | Stephen McGinley |
| Policy Number: | AOS28805696375 |
| Date of Loss: | 06/02/2017 |
| Policy Effective: | 04/28/2017 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the LM General Insurance Company in the usual and customary course of its business.

Kaylin McClure
Policy Copy Support

KM
Enclosures

 **Questions about your Policy?**
Call 1-800-778-1930

**Policy Number:**
AOS-288-056963-75 7  5

**Report a Claim:**
1-888-775-5459 or
LibertyMutual.com/claims



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total Annual Premium: $3,506.00

Reason for your new declarations page: Policy Change 02
Please refer to the Change Detail section for more information.
Effective date of this change: 04/28/2017

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.



### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Lisa A Mooney<br>Stephen McGinley | Policy Number: | AOS-288-056963-75 7  5 |
| Mailing Address: | 2609 Madara Rd<br>Bensalem PA 19020-1318 | Policy Period: | 04/04/2017-04/04/2018 12:01 a.m.<br>standard time at the address of the<br>Named Insured |
| | | Declarations Effective: | 04/28/2017 |

### Vehicles Covered by Your Auto Policy

| | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2014 | TOYOTA | CAMRY | 4T1BF1FKXEU356103 |
| 2 | 2015 | GMC | SIERRA | 3GTU2WEC9FG321069 |
| 3 | 2015 | KIA | OPTIMA | 5XXGN4A75FG517689 |

### Driver Information

| | NAME | STATE | | NAME | STATE |
|---|---|---|---|---|---|
| 1 | Lisa A Mooney | PA | 2 | Stephen McGinley | PA |

To ensure proper coverage, please contact us to add drivers not listed above.

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your Total Annual  Policy Premium.

### Vehicle Discounts

| | VEH 1<br>2014<br>TOYOTA<br>CAMRY | VEH 2<br>2015<br>GMC<br>SIERRA | VEH 3<br>2015<br>KIA<br>OPTIMA |
|---|---|---|---|
| Anti-Theft Device Discount | • | • | • |
| Vehicle Safety Discount | • | • | • |



? Want to Add a Coverage?
Call 1-800-778-1930 to talk to
your agent about the availability
of this coverage and whether it
meets your needs.

Policy Number:
AOS-288-056963-75 7  5

Report a Claim:
1-888-775-5459 or
LibertyMutual.com/claims

Liberty Mutual INSURANCE

DISCOUNTS AND BENEFITS SECTION  continued

**Policy Discounts**

• Early Shopper Discount    • Paperless Policy Discount    • Electronic Funds Transfer
                                                             Discount

• Multi-Car Discount

# Coverage Information

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

THIS POLICY COVERS COLLISION DAMAGE TO RENTAL VEHICLES.

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|---|
| | | | VEH 1 2014 TOYOTA CAMRY | VEH 2 2015 GMC SIERRA | VEH 3 2015 KIA OPTIMA |
| **A. Liability** | | | | | |
| Bodily Injury | $ $ | 100,000 Each Person 300,000 Each Accident | $192 | $182 | $208 |
| Property Damage | $ | 100,000 Each Accident | $131 | $147 | $130 |
| Limited Tort Option Selected | | | | | |
| **C. Uninsured Motorists** | | | | | |
| Uninsured Motorists Bodily Injury | $ $ | 100,000 Each Person 300,000 Each Accident | $19 | $21 | $19 |
| Limited Tort Option Selected | | | | | |
| **Underinsured Motorists** | | | | | |
| Underinsured Motorists Bodily Injury | $ $ | 100,000 Each Person 300,000 Each Accident | $49 | $56 | $49 |
| Limited Tort Option Selected | | | | | |
| **D. Coverage for Damage to Your Auto** | | | | | |
| Collision | | | $482 | $478 | $507 |
| Actual Cash Value Less Deductible Shown Veh 1 $500          Veh 2 $500 Veh 3 $500 | | | | | |
| Other Than Collision | | | $157 | $210 | $145 |



? Want to Add a Coverage?
Call 1-800-778-1930 to talk to your agent about the availability of this coverage and whether it meets your needs.

Policy Number:
AOS-288-056963-75 7  5

Report a Claim:
1-888-775-5459 or
LibertyMutual.com/claims

Liberty Mutual. INSURANCE

## Coverage Information continued

| COVERAGE | LIMITS | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|
| | | VEH 1 2014 TOYOTA CAMRY | VEH 2 2015 GMC SIERRA | VEH 3 2015 KIA OPTIMA |

**D. Coverage for Damage to Your Auto** (continued)

Actual Cash Value Less Deductible Shown
Veh 1 $500           Veh 2 $500
Veh 3 $500

**First Party Benefits**

| First Party Benefits | | $112 | $104 | $108 |
|---|---|---|---|---|

5,000 Medical Expense
1,500 Funeral Expense
5,000 Income Loss
5,000 Accidental Death

Limited Tort Option Selected

| Annual Premium Per Vehicle : | | $1,142 | $1,198 | $1,166 |
|---|---|---|---|---|

Premium Adjustment from 04/28/2017 to 04/04/2018

| | VEH 1 | VEH 2 | VEH 3 |
|---|---|---|---|
| | $52 | $53 | $53 |

Total Adjustment: $158.00

**Total Annual Policy Premium: $3,506.00**

### Valuable Benefits Included in Your Policy

We want to make sure you are aware and taking advantage of the following benefits included in your policy simply for being our customer.

- 24-Hour Claims Assistance: You never know when you'll have an accident, but if you do, our claims team will be available 24/7 to quickly handle your claim by phone, online, or on your mobile device.

- Lifetime Repair Guarantee: If you have an accident, we'll make sure your car is fixed right. Choosing one of our Guaranteed Repair Network shops will guarantee the repairs for as long as you own your car.

### Additional Information for Vehicles Covered by Your Policy

| Loss Payee(s) | Month/Year Expires |
|---|---|
| VEH 1: TOYOTA FINANCIAL | 05/2017 |
| VEH 2: GM FINANCIAL | 07/2018 |
| VEH 3: HYUNDAI LEASE AND TITLE | 03/2021 |



| Questions about your Policy?<br>Call 1-800-778-1930 | Policy Number:<br>AOS-288-056963-75 7  5 | Report a Claim:<br>1-888-775-5459 or<br>LibertyMutual.com/claims |
| --- | --- | --- |

---

## Additional Information for Vehicles Covered by Your Policy (continued)

### Vehicles Owned by Other Than the Named Insured

VEH 1: TOYOTA FINANCIAL
VEH 2: GM FINANCIAL

### Change Detail

Changes made to your policy for:  Policy Change 02

- Remove RightTrack Vehicle 1,2,3

### Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy.

Uninsured Motorists Coverage - Pennsylvania
(Non-Stacked) AS3688 06 16
Pennsylvania First Party Benefits Coverage
Endorsement PP 05 51 11 92
Split Underinsured Motorists Limits Pennsylvania
(Non-Stacked) PP 04 16 07 90
Split Liability Limits PP 03 09 04 86
Nuclear, Bio-Chemical & Mold Exclusion Endorsement
AS2221 04 05
Loss Payable Clause PP 03 05 08 86

Underinsured Motorists Coverage - Pennsylvania
(Non-Stacked) AS3690 06 16
Limited Tort Alternative Information Notice
AS2108 04 99
Split Uninsured Motorists Limits Pennsylvania
(Non-Stacked) PP 04 20 07 90
Additional Insured - Lessor  AS1187 11 90
Coverage For Damage To Your Auto Exclusion
Endorsement PP 13 01 12 99

LibertyGuard Auto Policy Declarations provided and underwritten by  LM General Insurance Company (a stock
insurance company), Boston, MA.

President

Secretary

This policy, including endorsements listed above,
is countersigned by:

Authorized Representative



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada.  Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

AUTO 3075PA 06 16



**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address

Your Auto or Trailer

Policy Period

Coverages and Amounts of Insurance

|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 3 |
| Supplementary Payments | 3 |
| Exclusions | 3 |
| Limit of Liability | 5 |
| Out of State Coverage | 5 |
| Financial Responsibility | 5 |
| Other Insurance | 5 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 5 |
| Exclusions | 6 |
| Limit of Liability | 6 |
| Other Insurance | 7 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 7 |
| Exclusions | 8 |
| Limit of Liability | 8 |
| Other Insurance | 8 |
| Arbitration | 8 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 9 |
| Transportation Expenses | 10 |
| Exclusions | 10 |
| Limit of Liability | 12 |
| Payment of Loss | 12 |
| No Benefit to Bailee | 13 |
| Other Sources of Recovery | 13 |
| Appraisal | 13 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

| | |
|---|---|
| General Duties | 13 |
| Additional Duties for Uninsured Motorists Coverage | 13 |
| Additional Duties for Coverage for Damage to Your Auto | 14 |

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 14 |
| Changes | 14 |
| Fraud | 14 |
| Legal Action Against Us | 15 |
| Our Right To Recover Payment | 15 |
| Policy Period And Territory | 15 |
| Termination | 15 |
| Transfer Of Your Interest In This Policy | 16 |
| Two Or More Auto Policies | 17 |
| **\*MUTUAL POLICY CONDITIONS** | **17** |

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

**1.** The "named insured" shown in the Declarations; and

**2.** The spouse if a resident of the same household.

**3.** The partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union, registered domestic partnership or other similar union was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

a. The end of 90 days following the change of residency;

b. The effective date of another policy listing the spouse or partner defined above as a named insured; or

c. The end of the policy period.

**B.** "We," "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

**1.** Under a written agreement to that person; and

**2.** For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks or boldfaced when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Newly acquired auto":

**1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

a. A private passenger auto; or

b. A pickup or van, for which no other insurance policy provides coverage, that:

(1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

(a) Incidental to your business of installing, maintaining or repairing furnishings or equipment; or

(b) For farming or ranching.

For this definition to apply to a newly acquired auto, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

**2.** Coverage for a newly acquired auto is provided as described below. If you ask us to insure a newly acquired auto after a specified time period described below has elapsed, any coverage we provide for a newly acquired auto will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a newly acquired auto will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.



However, for this coverage to apply to a newly acquired auto that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a newly acquired auto replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, an Other Than Collision deductible of $500 will apply.

**H.** "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

**I.** "Occupying" means in, upon, getting in, on, out or off.

**J.** "Personal vehicle sharing program" means a legal entity qualified to do "business" in this state and engaged in the "business" of facilitating the sharing of private passenger motor vehicles for noncommercial use by individuals within this state. Private passenger motor vehicle as it relates to "personal vehicle sharing program" means a four wheel passenger or station wagon type motor vehicle insured under an automobile liability insurance policy covering any individuals residing in your household.

**K.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**L.** "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

**M.** "Trailer" means a vehicle designed to be pulled by a:

**1.** Private passenger auto; or

**2.** Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**N.** "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**O.** "Your covered auto" means:

**1.** Any vehicle shown in the Declarations.

**2.** A "newly acquired auto".

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

**3.** Any "trailer" you own.



4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;       d. loss; or

   b. repair;          e. destruction.

   c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto" with your express or implied permission. The actual use must be within the scope of that permission.

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

However, for the purposes of this coverage, "insured" does not mean any person who is using "your covered auto" under a "personal vehicle sharing program."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured:"

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

6. Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any person:

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that person.

3. For "property damage" to property:

   a. rented to;

   b. used by; or

   c. in the care of;

that person.

This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.



**4.** For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

**5.** For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (A.5.) does not apply to a share-the-expense car pool.

**6.** While employed or otherwise engaged in the "business" of:

   **a.** selling;              **d.** storing; or

   **b.** repairing;          **e.** parking;

   **c.** servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. you;

   b. any "family member;" or

   c. any partner, agent or employee of you or any "family member."

**7.** Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

**8.** Using a vehicle without a reasonable belief that that person is entitled to do so.

**9.** For "bodily injury" or "property damage" for which that person:

   a. is an insured under a nuclear energy liability policy; or

   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. American Nuclear Insurers;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

**10.** For "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

   **1.** Any motorized vehicle having fewer than four wheels.

   **2.** Any vehicle, other than "your covered auto," which is:

      a. owned by you; or

      b. furnished or available for your regular use.

   **3.** Any vehicle, other than "your covered auto," which is:

      a. owned by any "family member;" or

      b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

      a. owned by a "family member;" or

      b. furnished or available for the regular use of a "family member."

   **4.** Any vehicle, while being used for:

      a. competing in; or

      b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.



**LIMIT OF LIABILITY**
**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

    **1.** "Insureds;"

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the auto accident.

**B.** We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

**OUT OF STATE COVERAGE**
If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

    **1.** A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

    **2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**
When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**
If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance. However, any insurance we provide for a temporary substitute vehicle provided by a motor vehicle dealer when "your covered auto" is being transported, serviced, repaired or inspected by the motor vehicle dealer, shall be primary.

**PART B - MEDICAL PAYMENTS COVERAGE**

**INSURING AGREEMENT**
**A.** We will pay "usual and customary charges" incurred for necessary medical and funeral services because of "bodily injury:"

    **1.** Caused by accident; and

    **2.** Sustained by an "insured."

    We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

    **1.** You or any "family member:"

        **a.** while "occupying;" or

        **b.** as a pedestrian when struck by;

        a motor vehicle designed for use mainly on public roads or a trailer of any type.

    **2.** Any other person while "occupying" "your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission.

    **3.** Any other person while "occupying," as a guest, an automobile not owned by you or a family member, while being operated by you or a family member.

    However, for the purposes of this coverage, "insured" does not mean any person who is "occupying" or using "your covered auto" under a "personal vehicle sharing program."

**C.** "Usual and customary charges" as used in this Part means:



The lowest of the following:

1. The charge billed by the medical provider for covered treatment;
2. The eightieth percentile charge for that covered treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth or similar database;
3. The amount authorized by a state mandated fee schedule or by another law or regulation; or
4. The amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party.

The "insured" shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any person for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.
2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (2.) does not apply to a share-the-expense car pool.
3. Sustained while "occupying" any vehicle located for use as a residence or premises.
4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."
5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by you; or
   b. furnished or available for your regular use.
6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."
   However, this exclusion (6.) does not apply to you.
7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.
8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.
9. Caused by or as a consequence of:
   a. discharge of a nuclear weapon (even if accidental);
   b. war (declared or undeclared);
   c. civil war;
   d. insurrection; or
   e. rebellion or revolution.
10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. nuclear reaction;
    b. radiation; or
    c. radioactive contamination.
11. Sustained while occupying any vehicle while being used for:
    a. competing in; or
    b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:



1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

**B.** Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

**C.** No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

1. You or any "family member."
2. Any other person "occupying" "your covered auto."
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.
3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
   a. you or any "family member;"
   b. a vehicle which you or any "family member" are "occupying;" or
   c. "your covered auto."
4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company;
   a. denies coverage; or
   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.



**6.** While located for use as a residence or premises.

## EXCLUSIONS

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

   **1.** While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   **2.** If that person or the legal representative settles the "bodily injury" claim without our consent.

   **3.** While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does not apply to a share-the-expense car pool.

   **4.** Using a vehicle without a reasonable belief that that person is entitled to do so.

**B.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   **1.** Workers' compensation law; or

   **2.** Disability benefits law.

**C.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

   **1.** "Insureds;"

   **2.** Claims made;

   **3.** Vehicles or premiums shown in the Declarations; or

   **4.** Vehicles involved in the accident.

**B.** Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

   **1.** Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

   **2.** Paid or payable because of the "bodily injury" under any of the following or similar law:

   a. workers' compensation law; or

   b. disability benefits law.

**C.** Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

**A.** If we and an "insured" do not agree:

   **1.** Whether that person is legally entitled to recover damages under this Part; or

   **2.** As to the amount of damages;

   either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

   **1.** Pay the expenses it incurs; and



**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

    **1.** Whether the "insured" is legally entitled to recover damages; and

    **2.** The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

---

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one of "your covered auto" or "non-owned auto" results from the same collision, only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

    **1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

    **2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

    If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

    Loss caused by the following is considered other than "collision:"

    **1.** Missiles or falling objects;

    **2.** Fire;

    **3.** Theft or larceny;

    **4.** Explosion or earthquake;

    **5.** Windstorm;

    **6.** Hail, water or flood

    **7.** Malicious mischief

    **8.** Riot or Civil Commotion;

    **9.** Contact with bird or animal; or

    **10.** Breakage of glass

    If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

**C.** "Non-owned auto" means:

    **1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

    **2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

        a. breakdown;        d. loss; or

        b. repair;          e. destruction.

        c. servicing;



**CUSTOMIZED EQUIPMENT COVERAGE**

**A.** We will pay up to $500 for theft or damage to "customized equipment" if the loss is caused by:

   **1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   **2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto. Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a "non-owned auto" keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for "your covered auto" or any "non-owned auto".

**B.** "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

   **1.** are permanently installed or attached by bolts or brackets;

   **2.** are removable from a housing unit that is permanently installed inside the auto;

   **3.** are permanently bonded to the vehicle by an adhesive or welding procedure; or

   **4.** change the appearance or performance of the vehicle

   including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

   This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered "customized equipment".

   This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered "customized equipment".

**C.** If you have purchased additional coverage for "customized equipment" we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

**D.** The most we will pay for parts, equipment and accessories that are:

   **1.** not installed by the auto manufacturer or dealer; and

   **2.** permanently installed in or upon the auto

   is the actual cash value of the vehicle not including such parts, equipment and accessories.

   However under no circumstances will we pay more than the limits identified in the declaration.

**TRANSPORTATION EXPENSES**

We will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies only in the event of the theft of "your covered auto" or "non-owned auto". We will pay only transportation expenses incurred during the period:

   **1.** Beginning 48 hours after the theft; and

   **2.** Ending when "your covered auto" is returned to use or we pay for its loss.

**EXCLUSIONS**

We will not pay for:

   **1.** Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (1.) does not apply to a share-the-expense car pool.

   **2.** Damage due and confined to:

      a.   wear and tear;



    b.  freezing;

    c.  mechanical or electrical breakdown or failure; or

    d.  road damage to tires.

    This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

**3.**  Loss due to or as a consequence of:

    a.  radioactive contamination;

    b.  discharge of any nuclear weapon (even if accidental);

    c.  war (declared or undeclared);

    d.  civil war;

    e.  insurrection; or

    f.  rebellion or revolution.

**4.**  We will not pay for loss to equipment that is not permanently installed in or upon "your covered auto" or any "non-owned auto". This consists of any equipment that either is designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

        radios and stereos; tape decks; compact disc players and burners; digital video disc (DVD) players and burners; citizens band radios; scanning monitor receivers; television monitor receivers; global positioning system (GPS) receivers and/or components; video cassette players and recorders; audio cassette recorders; or personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

    All accessories used with the above or similar equipment are also excluded.

**5.**  Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member:"

    a.  engaged in illegal activities; or

    b.  failed to comply with Environmental Protection Agency or Department of Transportation standards.

    This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

**6.**  Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

    a.  acquire during the policy period; and

    b.  ask us to insure within 30 days after you become the owner.

**7.**  Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**8.**  Loss to:

    a.  awnings or cabanas; or

    b.  equipment designed to create additional living facilities.

**9.**  Loss to equipment designed or used for the detection or location of radar.

**10.**  Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a.  special carpeting and insulation, furniture or bars;

    b.  facilities for cooking and sleeping;

    c.  height-extending roofs; or

    d.  custom murals, paintings or other decals or graphics.

**11.**  Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:



a.  selling;              d.  storing; or

b.  repairing;           e.  parking;

c.  servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

**12.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

**13.** We will not pay for loss to "customized equipment" in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

**14.** We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

**15.** Loss to "your covered auto" or any "non-owned auto" while the car is being used for:

a.  competing in; or

b.  practicing or preparing for

any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

**16.** Loss to "your covered auto" or "non-owned auto" while being used in a "personal vehicle sharing program."


## LIMIT OF LIABILITY

**A.** At our option, our limit of liability for loss will be the lowest of:

**1.** The actual cash value of the stolen or damaged property;

**2.  a.** The amount necessary to repair or replace the property;

**b.** Determination of the cost of repair or replacement will be based upon one of the following:

(1) the cost of repair or replacement agreed upon by you and us;

(2) a competitive bid approved by us; or

(3) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

**3.** The limit of liability shown in the Declarations.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss. In this case, the actual cash value consists of the value of the vehicle not including any "customized equipment."


## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

**1.** You; or

**2.** The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.



**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery except for a motor vehicle provided by a motor vehicle dealer when an "insured" has custody of or is operating that motor vehicle, while the "insured's" motor vehicle is being transported, serviced, repaired or inspected by a motor vehicle dealer. This exception only applies to the loan of a motor vehicle by a motor vehicle dealer that occurs without financial remuneration in the form of a fee, rental or lease charge paid directly by the "insured" operating the motor vehicle.

Other Sources of Recovery include but are not limited to:

  **1.** Any coverage provided by the owner of the "non-owned auto;"

  **2.** Any other applicable physical damage insurance;

  **3.** Any other source of recovery applicable to the loss.

**APPRAISAL**

**A.** If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

  **1.** Pay its chosen appraiser; and

  **2.** Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

  **1.** Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

  **2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

  **3.** Submit, as often as we reasonably require, within 30 days of our request:

    a. to examinations by physicians we select under terms we require. We will pay for these exams.

    b. to interviews and recorded statements without the need for us to conduct an examination under oath.

    c. to examination under oath and subscribe the same.

  **4.** Authorize us to obtain, within 30 days of our request:

    a. medical reports; and

    b. other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.

  **5.** Submit a proof of loss when required by us within 30 days of our request.

**C.** A person seeking Uninsured Motorists Coverage must also:

  **1.** Promptly notify the police if a hit-and-run driver is involved.



2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;

3. The location where your vehicle is principally garaged;

4. Customized equipment or parts.

5. The persons who regularly operate a covered auto.

You also agree to disclose all licensed drivers residing in your household.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

This policy was issued in reliance upon the information provided on your application. Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.



We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

    **1.** We agree in writing that the "insured" has an obligation to pay; or

    **2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

    **1.** Whatever is necessary to enable us to exercise our rights; and

    **2.** Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

    **1.** Hold in trust for us the proceeds of the recovery; and

    **2.** Reimburse us to the extent of our payment less reasonable attorney's fees, costs and expenses incurred by that person in our collecting our share of the recovery.

**POLICY PERIOD AND TERRITORY**

**A.** This policy applies only to accidents and losses which occur:

    **1.** During the policy period as shown in the Declarations; and

    **2.** Within the policy territory.

**B.** The policy territory is:

    **1.** The United States of America, its territories or possessions;

    **2.** Puerto Rico; or

    **3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

**TERMINATION**

**A. Cancellation.** This policy may be cancelled during the policy period as follows:

    **1.** The named insured shown in the Declarations may cancel by:

        a. returning this policy to us; or

        b. giving us advance written notice of the date cancellation is to take effect.

    **2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

        a. at least 15 days notice of cancellation:

            (1) if notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;



(2)  for nonpayment of premium;

(3)  If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

b.  at least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**B.  Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy:

**1.**  At least 15 days notice before the end of the policy period:

a.  For nonpayment of premium; or

b.  If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

**2.**  At least 60 days notice before the end of the policy period in all other cases.

However, our right to non-renew the policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**C.  Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**D.  Other Termination Provisions.**

**1.**  We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.**  If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.**  The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.**  Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

**1.**  The surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death. Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the Declarations; and

**2.**  The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto."

Section 1. only applies if the civil union, registered domestic partnership or other similar union is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

**B.**  Coverage will only be provided until the end of the policy period.

## CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the affect of which is to render the provisions of such statute invalid or unenforceable in whole or part, we will have the right to recomputed the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.



**DUTY TO REPORT CHANGES**

You must promptly report to us all changes, including additions and deletions, in policy information. Further, you must report to us certain changes no later than 30 days after the change occurs. These are changes to:

1. your residence address;

2. operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;

3. the location where your vehicle is principally garaged;

4. the persons who regularly operate a covered auto;

5. the driver's license or operator's permit status of you, a relative, or a resident of your household.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**PRESIDENT**                                                                        **SECRETARY**

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission
Copyright, Insurance Services Office, Inc., 1988



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**UNINSURED MOTORISTS COVERAGE - PENNSYLVANIA (NON-STACKED)**                    **AS 3688 06 16**

Part **C** - Uninsured Motorists Coverage is replaced in its entirety by the following:

**SCHEDULE**

| UNINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ _____ | $ _____ $ _____ $ _____ | $ _____ $ _____ $ _____ |

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

**B.** "Insured" as used in this endorsement means:

1. You or any "family member".
2. Any other person "occupying":
   **a.** "Your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission; or
   **b.** Any other auto operated by you.
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:
   **a.** You or any "family member";
   **b.** A vehicle which you or any "family member" are "occupying"; or
   **c.** "Your covered auto".
   If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   **a.** Denies coverage; or
   **b.** Is or becomes:
      **(1)** Insolvent; or
      **(2)** Involved in insolvency proceedings.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.



AS 3688 06 16

**EXCLUSIONS**

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

    **1.** By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any motor vehicle owned by you or a "family member", which is not insured for Uninsured Motorist Coverage under this policy. This includes a trailer of any type used with that vehicle.

    **2.** By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Uninsured Motorist Coverage under this policy. This includes a trailer of any type used with that vehicle.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

    **1.** If that person or the legal representative settles the bodily injury claim without our consent. However, this exclusion **(B.1.)** does not apply if such settlement does not adversely affect our rights.

    **2.** While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion **(B.2)** does not apply to a share-the-expense car pool.

    **3.** Using a vehicle without a reasonable belief that that person is entitled to do so.

**C.** We do not provide Uninsured Motorists Coverage for "non-economic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion **(C.)** does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

**D.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits or similar law, except a workers' compensation law.

**E.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**F.** We do not provide Uninsured Motorists Coverage for any person for "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Schedule or in the Declarations for Uninsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

    **1.** "Insureds";

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Schedule or in the Declarations; or

    **4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

    **1.** Part **A** or Part **B** of this policy; or

    **2.** Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:



AS 3688 06 16

The following priorities of recovery apply:

**First** The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

**Second** The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

1. When there is applicable insurance available under the First priority:

   **a.** The limit of liability applicable to the vehicle the "insured" was "occupying", under the policy in the First priority, shall first be exhausted; and

   **b.** The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Uninsured Motorist Coverage for any one vehicle under any one policy providing coverage to you or any "family member".

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**UNDERINSURED MOTORISTS COVERAGE - PENNSYLVANIA (NON-STACKED)**          AS 3690 06 16

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| UNDERINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if **1.** or **2.** below applies:

**1.** The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

**2.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

    **a.** Have been given prompt written notice of such tentative settlement; and

    **b.** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

**1.** Received reasonable notice of the pendency of the suit resulting in the judgment; and

**2.** Had a reasonable opportunity to protect our interests in the suit.

**B.** "Insured" as used in this endorsement means:

**1.** You or any "family member".

**2.** Any other person "occupying":

    **a.** "Your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission; or

    **b.** Any other auto operated by you.

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

**C.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

**1.** For which liability coverage is provided under Part **A** of this policy.

**2.** Operated on rails or crawler treads.

**3.** Designed mainly for use off public roads while not on public roads.

**4.** While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

**1.** By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any motor vehicle



AS 3690 06 16

owned by you or a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

**2.** By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

**B.** We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any person:

**1.** While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**B.1.**) does not apply to a share-the-expense car pool.

**2.** Using a vehicle without a reasonable belief that that person is entitled to do so.

**C.** We do not provide Underinsured Motorists Coverage for "noneconomic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "underinsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (**C.**) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

**D.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits or similar law, except a workers' compensation law.

**E.** We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

**F.** We do not provide Underinsured Motorists Coverage for any person for "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Schedule or in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** The damages payable under this coverage shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured". It also includes all sums paid under Part A of this policy.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A**, Part **B** or Part **C** of this policy.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

**First**    The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

**Second**    The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

**1.** When there is applicable insurance available under the First priority:

**a.** The limit of liability applicable to the vehicle the "insured" was "occupying", under the policy in the First priority, shall first be exhausted; and



**AS 3690 06 16**

**b.** The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Underinsured Motorists Coverage for any one vehicle under any one policy providing coverage to you or any "family member".

**2.** When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us.  Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

**ADDITIONAL DUTIES**

A person seeking Underinsured Motorists Coverage must also promptly:

1. Send us copies of the legal papers if a suit is brought; and
2. Notify us in writing of a tentative

settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**PART F - GENERAL PROVISIONS**

The following is added to the Our Right To Recover Payment provision of Part F:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under paragraph **A.** with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and
2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and
2. We also have a right to recover the advanced payment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER:



**FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA**

PERSONAL AUTO
PP 05 51 11 92

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

**BASIC FIRST PARTY BENEFIT**

| Benefit | Limit Of Liability |
| --- | --- |
| Medical Expenses | $5,000 |

If indicated below or in the Declarations, the following options apply instead of the Basic First Party Benefit:

☐ **Added First Party Benefits**

| Benefits | Limit Of Liability |
| --- | --- |
| Medical Expenses | $_____ |
| Work Loss | $_____ subject to a maximum of $_____ per month |
| Funeral Expenses | $_____ |
| Accidental Death | $_____ |

☐ **Combination First Party Benefits**

| Benefits | Limit Of Liability |
| --- | --- |
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Funeral Expenses | $2,500 |
| Accidental Death | $_____ |
| Maximum Limit of Liability for the Total of All Combination First Party Benefits | $_____ |

Note: If Added First Party Benefits or Combination First Party Benefits are not shown as applicable in the Schedule or Declarations, only the Basic First Party Benefit applies.

**I. DEFINITIONS**

The Definitions section is amended as follows:

**A.** "The Act" refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

**B.** The following definitions are replaced:

**1.** "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

**2.** "Your covered auto" means a "motor vehicle":

**a.** To which Part **A** of this policy applies and for which a specific premium is charged; and

**b.** For which First Party Benefits Coverage required by the Act is maintained.

**C.** The following definition is added:

"Motor vehicle" means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

**1.** By muscular power; or

**2.** On rails or tracks.

**D.** "Insured" as used in this endorsement means:

**1.** You or any "family member".

**2.** Any other person while:

**a.** "Occupying" "your covered auto"; or

**b.** Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto".

Copyright, Insurance Services Office, Inc., 1992



If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## II. FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

#### A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of:

Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

1. Care;
2. Recovery; or
3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury". However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

#### B. ADDED FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Schedule or Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.
2. Work loss.

a. Loss of income. Up to 80% of gross income actually lost by an "insured" as a result of the accident.

b. Reasonable expenses actually incurred to reduce loss of income by hiring:
   (1) Special help, thereby enabling an "insured" to work; or
   (2) A substitute to perform the work a self-employed "insured" would have performed.

However, work loss does not include:

a. Loss of expected income or expenses incurred for services performed after the death of an "insured"; or

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work due to "bodily injury".

3. Funeral expenses. Funeral or burial expenses actually incurred if "bodily injury" causes an "insured's" death within 24 months from the date of the accident.

4. Accidental death. A death benefit paid if "bodily injury" causes the death of you or any "family member" within 24 months from the date of the accident.

We will pay accidental death to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, the benefit shall be paid to:

a. The deceased "insured's" surviving spouse; or

b. If there is no surviving spouse, the deceased "insured's" surviving children; or

c. If there is no surviving spouse or children, to the deceased "insured's" estate.

#### C. COMBINATION FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

   Copyright, Insurance Services Office, Inc., 1992   PP 05 51 11 92



Subject to the limits shown in the Schedule or Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

**1.** Medical expenses.

**2.** Work loss.

**3.** Funeral expenses.

**4.** Accidental death.

## EXCLUSIONS

**A.** We do not provide First Party Benefits Coverage for "bodily injury" sustained by any person:

**1.** While intentionally causing or attempting to cause "bodily injury" to himself or any other person. We will not pay accidental death on behalf of that person.

**2.** While committing a felony.

**3.** While seeking to elude lawful apprehension or arrest by a law enforcement official.

**4.** While maintaining or using a "motor vehicle" knowingly converted by that person. This exclusion **(A.4.)** does not apply to:

  **a.** You; or

  **b.** Any "family member".

**5.** Who, at the time of the accident, is:

  **a.** The owner of one or more registered "motor vehicles", none of which have in effect the financial responsibility required by the Act; or

  **b.** "Occupying" a "motor vehicle" owned by that person for which the financial responsibility required by the Act is not in effect.

**6.** Maintaining or using a "motor vehicle" while located for use as a residence or premises.

**7.** While "occupying" a:

  **a.** Recreational vehicle designed for use off public roads; or

  **b.** Motorcycle, moped or similar-type vehicle.

**B.** We do not provide First Party Benefits Coverage for "bodily injury":

**1.** Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion **(B.1.)** does not apply to:

  **a.** You; or

  **b.** Any "family member".

**2.** Caused by or as a consequence of:

  **a.** Discharge of a nuclear weapon (even if accidental);

  **b.** War (declared or undeclared);

  **c.** Civil war;

  **d.** Insurrection; or

  **e.** Rebellion or revolution.

**3.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

  **a.** Nuclear reaction;

  **b.** Radiation; or

  **c.** Radioactive contamination.

## LIMIT OF LIABILITY

**A.** The limits of liability shown in the Schedule or Declarations for the first party benefits that apply are the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

**1.** Claims made;

**2.** Vehicles or premiums shown in the Declarations;

**3.** Vehicles involved in the accident; or

**4.** Insurers providing first party benefits.

**B.** If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision **(B.)** will not change our maximum limit of liability.

**C.** Any amounts payable under this coverage shall be excess over any amounts:

**1.** Paid;

**2.** Payable; or

**3.** Required to be provided;

to an "insured" under any workers' compensation law or similar law.

Copyright, Insurance Services Office, Inc., 1992



## PRIORITIES OF POLICIES

**A.** We will pay first party benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

| | |
|---|---|
| **First** | The insurer providing benefits to the "insured" as a named insured. |
| **Second** | The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the Act. |
| **Third** | The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident. |
| **Fourth** | The insurer of any "motor vehicle" involved in the accident if the "insured" is not: |

    **a.** "Occupying" a "motor vehicle"; and

    **b.** Provided first party benefits under any other automobile policy.

An unoccupied parked "motor vehicle" is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

**B.** If 2 or more policies have equal priority within the highest applicable priority level:

**1.** The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved motor vehicles.

**2.** If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Schedule or Declarations.

**3.** The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

## III. PART F - GENERAL PROVISIONS

Part **F** is amended as follows:

The Our Right To Recover Payment provision does not apply.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

 Copyright, Insurance Services Office, Inc., 1992 **PP 05 51 11 92**



## LIMITED TORT ALTERNATIVE INFORMATION NOTICE - PENNSYLVANIA

**AS 2108 04 99**
(PP 03 38 07 90)

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss, except that:

**A.** An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

    **1.** Is convicted, or accepts Accelerated Rehabilitative Deposition for driving under the influence of alcohol or a controlled substance in that accident;

    **2.** Is operating a motor vehicle registered in another state;

    **3.** Intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

    **4.** Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law, provided that nothing in Paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under the limited tort alternative, to recover noneconomic damages under Uninsured Motorists Coverage or Underinsured Motorists Coverage.

**B.** An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

**C.** An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999



**SPLIT UNDERINSURED MOTORISTS LIMITS - PENNSYLVANIA (NON-STACKED)**

PERSONAL AUTO
PP 04 16 07 90

---

### SCHEDULE

| UNDERINSURED MOTORISTS COVERAGE | $ _____ each person |
|---|---|
| | $ _____ each accident |

Paragraph **A.** of the Limit of Liability provision in the Underinsured Motorists Coverage - Pennsylvania (Non-Stacked) endorsement is replaced by the following:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

        Copyright, Insurance Services Office, Inc., 1990

**PERSONAL AUTO**
**PP 04 20 07 90**

# SPLIT UNINSURED MOTORISTS LIMITS – PENNSYLVANIA (NON-STACKED)

## SCHEDULE

| UNINSURED MOTORISTS COVERAGE | $ _____ **each person** |
|---|---|
| | $ _____ **each accident** |

Paragraph **A.** of the Limit of Liability provision in the Uninsured Motorists Coverage – Pennsylvania (Non-Stacked) endorsement is replaced by the following:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.



**SPLIT LIABILITY LIMITS**                                          PP 03 09 04 86

### SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $ _____ | **each person** |
| | $ _____ | **each accident** |
| **Property Damage Liability** | $ _____ | **each accident** |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1985



## ADDITIONAL INSURED - LESSOR

AS 1187 11 90
(PP 03 19 08 86)

### SCHEDULE

Additional Insured (Lessor)*

**\* The Lessor as listed in the lease agreement on file with the Company.**

Description of "your leased auto":

Any liability and any required no-fault coverages afforded by this policy for "your leased auto" also apply to the lessor named in this endorsement as an additional insured. This insurance is subject to the following additional provisions:

1. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

   (a) you or any "family member," or

   (b) any other person except the lessor or any employee or agent of the lessor using "your leased auto."

2. **"Your leased auto"** means:

   (a) an auto shown in the Declarations or in this endorsement which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor, and

   (b) any substitute or replacement auto furnished by the lessor named in this endorsement.

3. If we terminate this policy, notice will also be mailed to the lessor.

4. The lessor is not responsible for payment of premiums.

5. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1986



**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD EXCLUSION ENDORSEMENT**        **AS 2221 04 05**

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Aside from such losses caused by terrorism activities, **we do not** provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused:

    a.  Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b.  Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2221 04 05                                    © 2003 Liberty Mutual Insurance Company



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

**PERSONAL AUTO**
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1999



## LOSS PAYABLE CLAUSE

PP 03 05 08 86

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement.  This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto."  However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest.  We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 05 08 86                          Copyright, Insurance  Services Office, Inc., 1986